COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Clements and Felton
Argued at Chesapeake, Virginia


JASON JERMAINE EMERSON

                                                        OPINION BY
v.        Record No. 0471-03-1            JUDGE JEAN HARRISON CLEMENTS
                                                        JUNE 8, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Charles D. Griffith, Jr., Judge

S. Clark Daugherty, Public Defender (Office of the Public Defender,
on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Jason Jermaine Emerson was convicted in a bench trial of possession of cocaine with

intent to distribute, in violation of Code § 18.2-248.  On appeal, Emerson contends the trial court

erred (1) in denying his motion to suppress his statement during a custodial interrogation

admitting ownership of a pair of shorts that contained cocaine and (2) in finding the evidence

sufficient to sustain his conviction.[1]  Finding no error, we affirm the conviction.

I.  BACKGROUND

"Under familiar principles of appellate review, we view the evidence and all reasonable

inferences fairly deducible from that evidence in the light most favorable to the Commonwealth,

the party that prevailed below."  Banks v. Commonwealth, 41 Va. App. 539, 540, 543, 586

S.E.2d 876, 877 (2003).  So viewed, the evidence established that, on May 9, 2002, Detective

---

[1] Emerson was also charged with possession of marijuana, in violation of Code
§ 18.2-250.1.  After the trial court denied his motion to suppress, Emerson pled guilty to this
charge and was convicted of it.  He does not challenge this conviction on appeal.

M.C. Pederson and Corporal Francis B. Mazzio, Jr., joined by other police officers of the Vice and Narcotics Division of the City of Norfolk Police Department, executed a search warrant for narcotics and weapons at 1538 East Ocean View Avenue, Apartment 10, in the City of Norfolk. Emerson was named in the search warrant. When the officers entered the small, one-room apartment, Emerson, the sole occupant, was in bed. In order "to clear the apartment" for the search, the officers handcuffed Emerson and took him outside to Mazzio. Mazzio had him sit on the front porch of the apartment, an area "like a motel room balcony," while the other officers conducted the search. Emerson, who was in public view while sitting on the porch, was wearing only boxer shorts.

Knowing that Emerson would need to be transported to police headquarters if any illegal narcotics or weapons were found in the apartment and that it was department "policy to dress the subject" before transporting him, Corporal Mazzio asked Emerson "what clothing he wanted" to wear. In response, Emerson described the specific clothes he wanted, including a particular shirt, a particular pair of shoes, and a pair of jean shorts that were on the floor beside the bed. Mazzio then "stuck [his] head through the [open] door" of the apartment and asked for the clothing.

Detective Pederson was inside the apartment preparing to start the search when she heard Mazzio "yell[] in" that he needed certain items of clothing from the apartment so that Emerson could get dressed, including "a pair of shorts that [were] on the floor . . . beside the bed." Pederson found a pair of jean shorts lying on the floor beside the bed. She picked them up and, pursuant to department policy, searched them "[t]o make sure there's no weapons or narcotics or anything in the shorts or evidence that we may need before we release it from the apartment." Inside the pockets of the shorts, Pederson found a video-store card in Emerson's name, a "Newport cigarette box," and "some U.S. currency." Removing those items from the pockets of

the shorts, Pederson took the requested shorts and other clothing outside and handed them to Mazzio.

"[A]ssum[ing]" that, pursuant to department policy, Pederson had already searched the jean shorts and other items of clothing before giving them to him, Corporal Mazzio did not search the clothes himself. He did not, however, see Pederson conduct such a search and was unaware that she had retrieved anything from the jean shorts Emerson had requested. It was only later that Mazzio was informed that Pederson had recovered various incriminating items from the shorts.

Upon receiving the jean shorts and other clothing from Pederson, Mazzio asked Emerson "if these were the ones he wanted, and he said yes." Mazzio gave the clothes to Emerson, and he put them on.

Inside the "Newport cigarette box" removed from the jean shorts, Detective Pederson discovered what she "suspected to be cocaine and marijuana."[2] The cigarette pack contained seven plastic-bag corners, each containing off-white powder, which was later determined by laboratory analysis to be cocaine. In total, the cocaine weighed 4.01 grams. The cigarette pack also contained a cellophane wrapper containing 4.2 grams of plant material, which was later determined by laboratory analysis to be marijuana. The money found in the shorts amounted to $345 and consisted of fourteen $20 bills, six $10 bills, and one $5 bill. During the search of the closet in the apartment, the police found a shoebox containing a vehicle registration and bank envelopes bearing Emerson's name, thirty .38-caliber bullets, twenty-seven 9-millimeter-caliber bullets, and a gun holster. A small electronic scale was also found inside a shoe in the same closet. The police also recovered a glass pipe that had "some residue in the bottom of" it and

_____

[2] It is unclear from the record whether Pederson discovered the suspected drugs inside the cigarette pack before or after giving the jean shorts to Mazzio.

- 3 -

found "marijuana seeds and residue all over the place" inside the apartment. No other "smoking devices" were found in the apartment.

Prior to trial, Emerson moved to suppress his identification of the shorts as his, arguing that his Miranda rights had been violated because he was in custody when the police asked about the shorts and he had not been advised of his rights before that questioning. Conceding Emerson was in custody when Corporal Mazzio asked him about the shorts, the Commonwealth argued that Mazzio's question whether the shorts Detective Pederson had given him were the shorts Emerson wanted was not an interrogation. The trial court denied Emerson's motion, finding that, although Emerson was in custody, Mazzio's question regarding the shorts did not constitute an interrogation requiring the giving of Miranda rights.

At trial, Detective Pederson was qualified as an expert in the investigation, use, and distribution of illegal narcotics. She testified that, based on the residue in the bottom of the glass pipe that was found in the apartment and the fact that "there was no screening in the pipe to show that it would be for cocaine use," the pipe was used exclusively "as a marijuana pipe." She further testified that the 4.01 grams of cocaine had a street value of at least $400 and that the denominations of the money found in Emerson's shorts were consistent with the sale of cocaine because dealers usually sell cocaine in $5, $10, $20, or $50 amounts. She also testified that those who buy cocaine for personal use typically purchase only $20 to $50 worth of cocaine each "time that they go to buy it," that the police typically "find weapons, ammunition, [and] holsters inside locations where narcotics are being sold," and that scales are used to "weigh out the amount of cocaine . . . for resale." Pederson opined that, in light of the lack of any evidence in the apartment of cocaine use, Emerson's possession of the cocaine, cash, electronic scale, ammunition, and holster was inconsistent with personal use of the cocaine. On

- 4 -

cross-examination, Pederson testified that a cocaine user "could consume seven packets of cocaine in a period of an hour" if he had "that bad of a habit."

At the conclusion of trial, Emerson argued the evidence was insufficient to prove he intended to distribute the cocaine. Finding the evidence sufficient, the trial court found Emerson guilty of possession of cocaine with intent to distribute, in violation of Code § 18.2-248.

This appeal followed.

## II. MOTION TO SUPPRESS

On appeal, Emerson contends his statement while in custody to Corporal Mazzio that the jean shorts retrieved by Detective Pederson were "the ones he wanted" was obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966). He asserts that his acknowledgment of ownership of the jean shorts was central to the determination that he possessed the drugs found in those shorts. He further asserts that, given the fact that Pederson had already searched the jean shorts and removed the illegal drugs from them, Mazzio's question regarding those shorts was designed to elicit an incriminating response. Thus, he argues, Mazzio's questions regarding his clothes were the functional equivalent of a custodial interrogation and should have been suppressed because the police did not advise him of his Miranda rights before questioning him.[3] Hence, he contends the trial court erred in denying his motion to suppress the statement. We disagree.

On appeal from a trial court's denial of a motion to suppress, the burden is on the appellant to show that the denial of the motion constituted reversible error. See Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980). In reviewing such a denial, "we consider the evidence adduced at both the suppression hearing and the trial." Blevins v.

---

[3] Although Corporal Mazzio specifically *asked* Emerson "what clothes he wanted" and later *asked* Emerson if the jean shorts Pederson had given him were the shorts he wanted, Emerson does not argue that Mazzio's questions constituted "express questioning" in violation of his Miranda rights. Instead, he claims solely that Mazzio's questions were the "functional equivalent of express questioning" amounting to an illegal interrogation.

Commonwealth, 40 Va. App. 412, 420, 579 S.E.2d 658, 662 (2003), aff'd on other grounds, 267 Va. 291, 590 S.E.2d 365 (2004). Moreover, we consider the evidence in the light most favorable to the Commonwealth, granting to the Commonwealth all reasonable inferences fairly deducible from the evidence. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). In addition, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). We review *de novo* questions of law and the "trial court's application of defined legal standards to the particular facts of a case." Watts v. Commonwealth, 38 Va. App. 206, 213, 562 S.E.2d 699, 703 (2002).

It is well established that "'[t]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination,' commonly known as Miranda warnings." Timbers v. Commonwealth, 28 Va. App. 187, 194, 503 S.E.2d 233, 236 (1998) (quoting Miranda, 384 U.S. at 444). "Failure to give Miranda warnings prior to custodial interrogation requires suppression of any illegally obtained statements." Blain v. Commonwealth, 7 Va. App. 10, 13, 371 S.E.2d 838, 840 (1998). "Before Miranda is triggered, however, an individual must be both in 'custody' and subjected to 'interrogation.'" Id.

The Commonwealth concedes, on appeal, that Emerson was not advised of his Miranda rights prior to his statement about the jean shorts. In addition, the Commonwealth conceded at the suppression hearing that Emerson was in custody when he made the statement "and is bound by that concession here." Timbers, 28 Va. App. at 194, 503 S.E.2d at 236.

The dispositive question before us, then, is whether Emerson was being subjected to "interrogation" when he essentially admitted to Mazzio that the jean shorts were his.

- 6 -

"The term 'interrogation' means either express questioning or its functional equivalent." Watts, 38 Va. App. at 214, 562 S.E.2d at 703. "The 'functional equivalent' of an interrogation is 'any words or actions on the part of the police (*other than those normally attendant to arrest and custody*) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" Id. (quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (emphasis added)). "The test is '"whether an objective observer would view an officer's words or actions as designed to elicit an incriminating response."'" Gates v. Commonwealth, 30 Va. App. 352, 355-56, 516 S.E.2d 731, 733 (1999) (quoting Timbers, 28 Va. App. at 196, 503 S.E.2d at 237 (quoting Blain, 7 Va. App. at 15, 371 S.E.2d at 841)). If the objective observer concludes that "'the police are trying to get [the suspect] to make an incriminating response,'" then the officer's words and actions constitute the functional equivalent of interrogation, and Miranda applies. Timbers, 28 Va. App. at 196, 503 S.E.2d at 237 (quoting Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 6.7(a) (1984)). Conversely, the Miranda requirements do not apply when the objective observer "'perceives the officer's purpose to be something other than eliciting [incriminating] information from the suspect.'" 2 Wayne R. LaFave et al., Criminal Procedure § 6.7(a), at 547 (2d ed. 1999) (quoting Welsh S. White, Interrogation Without Questions: Rhode Island v. Innis and United States v. Henry, 78 Mich. L. Rev. 1209, 1235 (1980)).

Applying this standard to the facts before us, we conclude that an "objective observer" would not perceive Corporal Mazzio's words and actions related to Emerson's clothes as being intended to elicit incriminating information from Emerson regarding the ownership of the jean shorts and their contents. Rather, the "objective observer" would perceive that Mazzio's only purpose was to get Emerson dressed, in furtherance of the officer's assigned duty. Moreover, nothing in the record concerning Detective Pederson's conduct would cause the same "objective observer" to perceive Corporal Mazzio's words and actions any differently.

When the police arrived at Emerson's apartment to execute the search warrant, Mazzio's assignment was to detain Emerson outside the apartment on the porch while other police officers searched the apartment. When brought out of the apartment to the porch, Emerson was dressed only in boxer shorts. Knowing that Emerson was exposed in a public area and that, pursuant to department policy, he would need to be dressed before he could be transported to police headquarters if any illegal drugs or weapons were found in the apartment, Mazzio asked Emerson "what clothing he wanted" to wear. Emerson identified the specific items of clothing he wanted, including a pair of jean shorts on the floor by the bed, and Mazzio relayed that information to the officers inside the apartment.

Upon hearing Mazzio's request, Pederson found the requested jean shorts on the floor of the apartment and, acting in accordance with department policy, searched the shorts and emptied the pockets before giving them to Mazzio. Pederson removed a video-store card, a "Newport cigarette box," and some money from the shorts. In giving the shorts to Mazzio, Pederson did not inform him about the search, and Mazzio was unaware that anything had been found in the pockets of the jean shorts.

Upon receiving the requested clothes, including the jean shorts, from Pederson, Mazzio asked Emerson "if these were the ones he wanted, and [Emerson] said yes." Mazzio gave the clothes to Emerson, and he put them on.

The objective purpose of Corporal Mazzio's two questions—to allow Emerson, who was wearing only boxer shorts, to get dressed—"was entirely legitimate" and Mazzio "did not deviate from that purpose." King v. Commonwealth, 243 Va. 353, 360, 416 S.E.2d 669, 672-73 (1992) (holding that, when the purpose of the police's encounter with defendant is entirely legitimate and the police do not deviate from that purpose, there is no "interrogation" within the meaning of Miranda). Indeed, the only viable alternative would have been to leave Emerson out in public

- 8 -

view and transport him to the police station in his exposed condition, which, under the circumstances was neither necessary nor acceptable.  Moreover, except to find out what clothes Emerson wanted to wear and to confirm that he had indeed gotten the clothes Emerson had asked for, Mazzio made no attempt to gain information from Emerson about the clothing or its contents, or about anything else related to the search inside the apartment for illegal drugs and weapons.  "We also note the total absence of any evidence that the questioning here was intended or designed to produce an incriminating response."  Wright v. Commonwealth, 2 Va. App. 743, 746, 348 S.E.2d 9, 12 (1986).

We conclude, therefore, that, viewed objectively, Corporal Mazzio's conduct manifests no deliberate design on the part of the police other than to allow Emerson, who was wearing only boxer shorts at the time, to get dressed.  Thus, we find that Mazzio's conduct merely amounted to "words or actions by the police which are normally attendant to . . . custody" when the person in custody is not fully clothed.  Wright, 2 Va. App. at 746, 348 S.E.2d at 12.  Consequently, we hold that, despite the incriminating outcome of Mazzio's words and conduct, Emerson was not subjected to the "functional equivalent" of "interrogation" within the meaning of Miranda, and Miranda safeguards were not implicated.  Cf. Innis, 446 U.S. at 303 n.10 (noting "by way of example," that, where the police, in furtherance of their attendant duties, do "no more than . . . drive past the site of the concealed weapon while taking the most direct route to the police station" and the suspect, upon seeing that site, "blurt[s] out that he would show the officers where the gun was located, it could not seriously be argued that this 'subtle compulsion' . . . constituted 'interrogation' within the meaning of the Miranda opinion").

Accordingly, the trial court did not err in denying Emerson's motion to suppress.

### III. SUFFICIENCY OF THE EVIDENCE

Emerson contends the evidence, which was entirely circumstantial, was insufficient to prove he intended to distribute the cocaine found in his jean shorts. Specifically, he argues the Commonwealth's evidence was not sufficiently convincing to exclude the reasonable hypothesis of innocence that he possessed the cocaine found in his shorts for his own personal use. We disagree.

When the sufficiency of the evidence is challenged on appeal, we review the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444, (1987). "'In so doing, we must . . . regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (quoting Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988)). We are further mindful that the "credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Crawley v. Commonwealth, 29 Va. App. 372, 375, 512 S.E.2d 169, 170 (1999). We will not disturb the conviction unless it is plainly wrong or unsupported by the evidence. Sutphin v. Commonwealth, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).

"Where an offense consists of an act combined with a particular intent, proof of the intent is essential to the conviction." Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988). "Because direct proof of intent [to distribute drugs] is often impossible, it must be shown by circumstantial evidence." Id. "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307

S.E.2d 864, 876 (1983). "However, the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

In considering an appellant's alternate hypothesis of innocence in a circumstantial evidence case, we must determine "not whether there is some evidence to support" the appellant's hypothesis of innocence, but, rather, "whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt." Hudson v. Commonwealth, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003) (internal quotations omitted). Additionally, "circumstantial evidence is not viewed in isolation." Id. at 514, 578 S.E.2d at 786. "'While no single piece of evidence may be sufficient, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."'" Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991) (quoting Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979) (quoting Karnes v. Commonwealth, 125 Va. 758, 764, 99 S.E. 562, 564 (1919))). "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997).

Factors that may indicate the defendant intended to distribute the illegal drugs in his possession include the "[p]ossession of a quantity [of drugs] greater than that ordinarily possessed for one's personal use," Iglesias v. Commonwealth, 7 Va. App. 93, 110, 372 S.E.2d 170, 180 (1988) (*en banc*), "[t]he method of packaging of the controlled substance," Servis, 6 Va. App. at 524, 371 S.E.2d at 165, the quantity and denomination of the cash possessed, see Welshman v. Commonwealth, 28 Va. App. 20, 37, 502 S.E.2d 122, 130 (1998) (*en banc*), "the

absence of any paraphernalia suggestive of personal use," id., the presence of "equipment related to drug distribution," McCain v. Commonwealth, 261 Va. 483, 493, 545 S.E.2d 541, 547 (2001), and the presence of firearms, see Glasco v. Commonwealth, 26 Va. App. 763, 775, 497 S.E.2d 150, 156 (1998), aff'd, 257 Va. 433, 513 S.E.2d 137 (1999).

Here, the evidence showed that Emerson possessed 4.01 grams of powder cocaine packaged in seven plastic bag corners and $345 in denominations of fourteen $20 bills, six $10 bills, and one $5 bill. He also had a small electronic scale and a large quantity of .38-caliber and 9-millimeter-caliber ammunition and a gun holster in his apartment. Emerson also possessed marijuana and a pipe used exclusively for smoking marijuana. However, no devices for consuming cocaine were found in the apartment. The Commonwealth's narcotics expert, Detective Pederson, testified that the denominations of the money Emerson had were consistent with the sale of cocaine. She further testified that the cocaine Emerson possessed had a street value of approximately $400 and that cocaine users typically purchase only $20 to $50 worth of cocaine each time they buy it. Pederson concluded that, based on these factors, along with the presence of the ammunition and gun holster and the scale to weigh the cocaine prior to distribution, and the absence of any devices with which Emerson could personally consume the cocaine, the cocaine recovered from Emerson's shorts was inconsistent with personal use.

The trial court could properly conclude from this evidence that Emerson intended to distribute the cocaine found in his possession. Although Detective Pederson also testified that a cocaine user "could consume seven packets of cocaine in a period of an hour" if he had "that bad of a habit," there is no evidence in the record that Emerson used cocaine or that he possessed it for his personal use. We hold, therefore, that the evidence presented by the Commonwealth is

sufficient to prove beyond a reasonable doubt that Emerson possessed the cocaine with the requisite intent to distribute it.

Accordingly, we affirm the conviction.

Affirmed.