UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and Fulton
Argued by videoconference

DEVONTAY TESHORN BROWDER

v.      Record No. 0597-21-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE CLIFFORD L. ATHEY, JR.
APRIL 19, 2022

FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Joseph M. Teefey, Jr., Judge

David G. Moss (The Law Office of David G. Moss, PLLC, on brief),
for appellant.

Mason D. Williams, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Devontay Teshorn Browder ("Browder") was convicted by the Circuit Court of

Dinwiddie County ("trial court") of a variety of felonies: robbery, conspiracy to commit

robbery, use of a firearm in the commission of a felony, and credit card theft.[1] On appeal, in his

sole assignment of error, Browder argues that there was insufficient evidence to convict him of

these crimes because there was no evidence from which the trial court could have concluded that

he was at the scene while the crimes were being committed. For the following reasons, we

affirm.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The trial court granted the Commonwealth's motion to *nolle prosequi* an additional
charge of grand larceny.

## I. BACKGROUND

"On appeal, an appellate court is required to consider the evidence and all inferences fairly deducible from it in the light most favorable to the Commonwealth, the prevailing party at trial." *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020). "In doing so, we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020). So viewed, the evidence shows as follows.

On June 17, 2020, around 11:00 p.m., Nadine Jackson ("Jackson") arrived at the Dinwiddie Health and Rehab Center for work. As Jackson sat in her car and gathered her things, a silver car pulled up behind her, preventing her from leaving. A young man from the silver car approached Jackson, asking if she could help him. She said, "Sure," and asked what he wanted. Thinking that he wanted money, she began looking for her change purse, but when she turned back to the man, he pointed a gun in her face and demanded money. Jackson surrendered her wallet, which contained cash and credit cards.[2] The gunman started toward the silver car but returned and told her there was no money in the wallet. Jackson told him the wallet contained credit cards that would "work." The gunman returned to the silver car and told someone inside the car that "she said the [credit] cards would work." The gunman entered the passenger side of the car, and they drove away. Jackson called the police and reported the incident.

Earlier that same evening, Dinwiddie County Sheriff's Deputies Hazelton ("Deputy Hazelton") and Owen ("Deputy Owen") responded to the larceny of a motor vehicle at a gas station on Route 1 in Dinwiddie County, about two miles from the Dinwiddie Health and Rehab Center. Kenneth Tucker ("Tucker"), the owner of the stolen car, informed Deputy Hazelton that he left his

---

[2] Jackson testified that her wallet contained about thirteen dollars that could be easily seen and five hundred dollars that were "tucked away" out of view.

keys in the ignition of his silver 2010 Nissan while he went inside to pay for gas, and while he was in the store, someone drove away in his car. As Tucker was explaining the incident to Deputy Hazelton, he "grabbed" Hazelton's shoulder, and pointed out a car travelling northbound on Route 1, and said it was his car.

Deputy Hazelton and Deputy Owen then engaged in "a lengthy pursuit" of the silver car on Interstate 85 for several miles, ending in Petersburg. Sometime after midnight, Petersburg Police Officer Peyton Stewart ("Officer Stewart") learned that the car was approaching Petersburg. When he saw the car and the Dinwiddie deputies in pursuit, he joined the chase. The chase ended on Grigg Street, where the occupants exited the car on foot, one from the driver's side, and another from the passenger's side. Officer Stewart chased the driver, detained him, and at trial identified him as Browder. Subsequently, Deputy Hazelton arrived, confirmed the silver vehicle was Tucker's stolen car, and arrested Browder. Deputy Hazelton found Tucker's identification card in the car and a wallet containing Jackson's information on the passenger-side floorboard.

Dinwiddie County Sheriff's Investigator Steve Shifflett ("Investigator Shifflett") arrived at the Dinwiddie Health and Rehab Center and interviewed Jackson about the robbery. Investigator Shifflett learned of the police pursuit on the radio and believed it was the same car involved in Jackson's robbery. Investigator Shifflett drove Jackson to Petersburg, where she confirmed that it was the same car. She also identified the passenger as the gunman.

At the conclusion of the Commonwealth's evidence, Browder moved to strike, arguing that the Commonwealth failed to exclude every reasonable hypothesis of innocence because the evidence was circumstantial and did not constitute an "unbroken chain" of events. Browder argued that the Commonwealth failed to exclude the hypothesis that he "got[] into the vehicle at some point after all of these other inciden[ts] . . . occurred." The trial court denied Browder's motion.

Browder rested his case without presenting any evidence and incorporated a renewed motion to strike in his closing argument. The trial court found that the evidence established the robbery, credit card theft, and use of a firearm. Addressing the conspiracy charge, the trial court found that someone other than the gunman was driving the silver car at the time of the robbery and blocked Jackson's car in so she could not leave. With respect to identity and Browder's suggestion that he entered the car after Jackson was robbed, the trial judge first noted the short time between the robbery and Officer Stewart's apprehension of Browder, approximately an hour. It further found that Browder attempted to elude police twice, by car and on foot, which indicated guilt. Concluding that Browder was the driver of the silver car at the time of the robbery, the trial court convicted Browder on all four counts. The trial court sentenced Browder to thirty-three years in prison, with eighteen years suspended. This appeal followed.

## II. STANDARD OF REVIEW

In a sufficiency case, we defer to the trial court's factual findings unless they are "plainly wrong or without evidence to support [them]." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). The trier of fact is required "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Brown v. Commonwealth*, 68 Va. App. 44, 55 (2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). There was sufficient evidence if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496-97 (2015)). Just because another trier of fact "might have reached a different conclusion" about what the evidence showed does not mean that this "[C]ourt [can] say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt." *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018) (first alteration in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

- 4 -

III. ANALYSIS

Browder argues that the Commonwealth's evidence did not justify the trial court's conclusion that Browder was the driver of the silver car at the time Jackson was robbed. He conceded at trial that if he was in fact the driver during the robbery committed against Jackson, the evidence would justify all four convictions. His entire argument rests on the hypothesis that he entered the car between the robbery and the end of the police chase. We affirm because the evidence supported the trial court's conclusion that Browder was the driver during the entire incident.

To prove beyond a reasonable doubt that Browder was the driver during the robbery, the Commonwealth needed to present evidence justifying the trier of fact in rejecting any reasonable hypothesis of innocence supported by the evidence. *Case v. Commonwealth*, 63 Va. App. 14, 22 (2014) (citing *Powers v. Commonwealth*, 211 Va. 386, 388 (1970); *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)). Even if "some evidence . . . support[s] the appellant's hypothesis of innocence," we must affirm if "any reasonable [fact finder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt." *Emerson*, 43 Va. App. at 277 (third and fourth alterations in original) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). A reasonable fact finder may reject theories advanced by the defendant even if they are supported by some evidence, so long as it could reasonably infer from all the other evidence a theory of the case consistent with guilt and inconsistent with innocence. *Commonwealth v. Moseley*, 293 Va. 455, 464-65 (2017) (citations omitted).

The evidence presented in this case contained several concurrent circumstances supporting the trial court's conclusion that Browder was involved in the armed robbery of Jackson. The robbery occurred around 11:00 p.m. During the robbery, the gunman talked with an occupant of the

car. When the gunman entered the car, he did so through the passenger's side and then sped away. There was sufficient evidence for the trial court to conclude that someone other than the gunman was driving the vehicle at the time of the robbery.

For several reasons, the trial court reasonably inferred that Browder was the driver. Browder was driving the car when the car chase ended in an ill-advised and short-lived foot chase. The circumstances during the car chase make it reasonable to infer that the same person was driving throughout the entire chase. And the relatively short time between the robbery and the beginning of the car chase makes it likely that the same person was driving the car at both times.

Browder was driving the car at the end of the car chase. After the robbery, Deputy Hazelton was alerted to the car traveling on Route 1 a short distance from the Rehab Center. Deputy Hazelton and Deputy Owen then began their "lengthy pursuit" of the silver car. That pursuit continued into a neighboring jurisdiction and ended around midnight, at which point the car's occupants fled. Officer Stewart chased the driver, apprehended him, and identified him as Browder. Jackson identified the passenger as the gunman.

Second, Browder argues that he could have entered the car during the police chase because there were times when the silver car was out of sight of the pursuing officers, but the evidence supported the trial court's conclusion that no such thing happened. Browder is correct that the Commonwealth did not produce testimony from each pursuing police officer regarding which ones had the vehicle in sight at what times. Also, Deputy Hazelton admitted that he did not personally see the car at every moment of the chase. However, Officer Stewart testified that when he first saw the silver car in Petersburg, he could also see the blue lights of the Dinwiddie deputies in pursuit. From that, the trial court could infer that the police were close enough during the entire chase that the original occupants of the silver car would not have stopped to take on a new occupant, let alone switch out drivers. *See Corbin v. Commonwealth*, 44 Va. App. 196 (2004) (upholding the trial

- 6 -

court's inference that the occupant of the driver's side of a wrecked vehicle was the driver despite testimony that some other person not found at the scene had been driving). Browder presented the trial court with nothing more than the theoretical possibility that he could have replaced a previous driver during the chase. He presented no evidence that such a thing actually occurred.

Browder also argues he could have entered the car in the time between the robbery and the initial pursuit by Deputy Hazelton and Deputy Owen, but the circumstances make that unlikely. He offers no evidence to support this theory, instead merely pointing out that it was theoretically possible. It was reasonable for the trial court to infer that Browder was the driver at both times, which were fairly close together. Between the robbery, which started around 11:00 p.m., and the arrest, which occurred not long after 12:00 a.m., the timeline must accommodate the following: the robbery, travel to the gas station on Route 1, the vehicular chase, and a foot chase. That leaves a relatively short amount of time between the robbery and the beginning of the chase, which supports the trial court to infer that the same individual was driving at both times.

Finally, the trial court reasonably considered Browder's two separate acts of flight. Under settled jurisprudence, a fact finder may consider "affirmative acts of falsehood or flight immediately following the commission of a crime, which tend to show a person's guilty knowledge of, and participation in, a criminal act." *Jones v. Commonwealth*, 279 Va. 52, 57 (2010); *see also Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (noting that flight is admissible as evidence of consciousness of guilt). Here, Browder attempted to flee from the police in the stolen vehicle, disregarding their signals to stop. After the car chase, Browder attempted to flee on foot. The trial court properly considered both of Browder's attempts to flee as probative of guilt with respect to the robbery of Jackson. *See Ricks v. Commonwealth*, 39 Va. App. 330, 336-37 (2002) (noting that flight can be probative of each of multiple potential causes of guilt (citing *Leonard v. Commonwealth*, 39 Va. App. 134 (2002); *Langhorne v. Commonwealth*, 13

Va. App. 97, 103 (1991))). Considering the totality of the evidence, the trial court did not err in finding that Browder was present during the robbery.

IV. CONCLUSION

Accordingly, we affirm all four convictions.

*Affirmed.*