COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Athey and Callins
Argued at Virginia Beach, Virginia

UNPUBLISHED

RAY LINDSEY EVERETTE

MEMORANDUM OPINION* BY
v.      Record No. 0032-22-1      JUDGE CLIFFORD L. ATHEY, JR.
DECEMBER 29, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Stephen J. Telfeyan, Judge

Kelsey M. Bulger, Senior Assistant Public Defender (Virginia
Indigent Defense Commission, on briefs), for appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Ray Lindsey Everette ("Everette") appeals his conviction in the Circuit Court of the City of

Chesapeake ("trial court") for operating a motor vehicle after having been adjudged a habitual

offender. Everette contends that because Code § 46.2-357 was repealed before his trial, the trial

court erred in convicting him. He also argues that the trial court erred in convicting him because the

Commonwealth failed to prove that he was operating a motor vehicle. We disagree and therefore

affirm the judgment of the trial court.

I. BACKGROUND

Jared Egge ("Egge") testified that between 4:00 p.m. and 6:00 p.m. on September 13, 2019,

he was driving in heavy traffic on Route 168 when his vehicle was suddenly rear-ended by a

minivan. Following the collision, Egge exited his vehicle before realizing that a third vehicle had

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

rear-ended the minivan which caused the minivan to rear-end his vehicle. Egge walked back to check on the condition of the minivan's driver before proceeding farther back to the third vehicle where he encountered Everette. Egge testified that as he approached the third vehicle, Everette was "kind of behind the driver's door, to the quarter panel." Everette asked Egge if he had seen another man run from Everette's vehicle. Everette told Egge that another man had been driving Everette's vehicle at the time of the accident. Everette then walked across two lanes of oncoming traffic and paced along the shoulder of the opposite side of the four-lane highway. Egge followed Everette across the highway and persuaded him to return to the scene of the accident as they waited for law enforcement to arrive.

Law enforcement arrived ten to twelve minutes after the accident. Officer Harris interviewed those involved in the three-car accident. When Officer Harris asked for his driver's license, Everette could not produce it. Everette told Officer Harris that he was not the driver of the vehicle, but that he had been drinking that day, fallen asleep, and awakened to "this shit." Everette also stated that a man named Nate had been the person driving the vehicle and that Nate ran toward the tree line following the accident. In response, Officer Harris requested a K-9 unit to track the alleged driver, Nate.

Officer Cannon noticed that Everette was off balance when standing. As a result, after handcuffing him, Officer Cannon instructed Everette to lay across the police vehicle so that he did not fall. Everette then advised the other officers present that he needed an inhaler but did not have one in the vehicle. Medics were then called to the scene by law enforcement, but Everette refused their care, at which point Officer Harris transported Everette to the hospital for treatment. Officer Harris testified at trial that he overheard Everette tell the nurse at the hospital that "[n]obody was driving." But when asked by the nurse "who was driving with him," Everette said the person's name was "Willie," then said, "Joe Schmope," and then said, "he didn't know."

Back at the scene of the accident, K-9 Officer Slezak performed a K-9 search beginning approximately an hour after Everette's allegation that another person had been driving the vehicle. Officer Slezak explained that such temporal distance from the initial imprint of tracks is optimal and that the conditions for tracking that evening were "about as good as it gets." The K-9 never alerted the officers to any ground disturbance during the search for the alleged driver.

Everette was indicted on January 7, 2020, for operating a motor vehicle after having been declared a habitual offender pursuant to Code § 46.2-357. On March 31, 2021, the General Assembly repealed Code § 46.2-357 in its entirety, effective July 1, 2021. At trial, the Commonwealth established that Everette had previously been adjudged a habitual offender in 2005. Everette was convicted and sentenced to five years of incarceration with four of those years suspended. He now appeals.

## II. ANALYSIS

### A. *Standard of Review*

"[T]he issue of whether a statute should be applied retroactively presents a question of law that we review *de novo* on appeal." *Taylor v. Commonwealth*, 44 Va. App. 179, 184 (2004). "[I]nterpreting a law to apply retroactively is 'not favored, and . . . a statute is always construed to operate prospectively unless a contrary legislative intent is manifest.'" *McCarthy v. Commonwealth*, 73 Va. App. 630, 647 (2021) (second alteration in original) (quoting *Berner v. Mills*, 265 Va. 408, 413 (2003)). "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).

B. *The trial court did not err by convicting Everette under Code § 46.2-357.*

Everette argues that because Code § 46.2-357 was repealed instead of amended and reenacted, his conviction is void ab initio. Since Everette failed to raise this objection at trial, he asks this Court to review his assignment of error under Rule 5A:18's "ends of justice" exception.

"[T]o invoke the 'ends of justice' exception, an appellant 'must "affirmatively show[] that a miscarriage of justice has occurred[,] not . . . that a miscarriage *might* have occurred."'" *Perry v. Commonwealth*, 58 Va. App. 655, 674 (2011) (second and fourth alterations in original) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 219 (2004) (en banc)). The error must also have been "clear, substantial[,] and material." *Id.* at 668 (quoting *Bazemore*, 42 Va. App. at 219).

Although the common law rule of abatement forbade the continued prosecution of offenses defined by statutes which were repealed during the course of the prosecution, *Abdo v. Commonwealth*, 218 Va. 473, 475 (1977), the General Assembly has modified the common law rule. Code § 1-239. Indeed, "[a] core principle of statutory interpretation is that 'interpreting a law to apply retroactively is "not favored, and . . . a statute is always construed to operate prospectively unless a contrary legislative intent is manifest."'" *Montgomery v. Commonwealth*, 75 Va. App. 182, 189-90 (2022) (second alteration in original) (quoting *McCarthy*, 73 Va. App. at 647). New procedural statutes should apply to pending proceedings "so far as practicable." *McCarthy*, 73 Va. App. at 648 n.9. However, newly enacted substantive statutes do not apply retroactively except to the extent that they provide for retroactive application, or to the extent that they decrease the defendant's punishment and the defendant then agrees to the application of the new law. Code § 1-239; *McCarthy*, 73 Va. App. at 647.

This rule applies equally to the retroactive application of substantive criminal statutes (whether they decriminalize conduct or merely reduce the punishment) in pending criminal

prosecutions. *See Ruplenas v. Commonwealth*, 221 Va. 972, 977-78 (1981) (citing *Abdo*, 218 Va. App. at 478); *Green v. Commonwealth*, 75 Va. App. 69, 86 (2022).

> Every reasonable doubt is resolved against a retroactive operation of a statute, and words of a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them or unless the intention of the legislature cannot be otherwise defined.

*Shilling v. Commonwealth*, 4 Va. App. 500, 507 (1987).

Although Code § 46.2-357 was repealed, rather than being amended and reenacted, that does not impact our analysis. Here, Everette was indicted on January 7, 2020. On March 31, 2021, Title 46.2, Chapter 3, Article 9, encompassing Code § 46.2-357, was repealed in its entirety, effective July 1, 2021. The portion of the law repealing Code § 46.2-357, in its entirety states: "That Article 9 (§§ 46.2-355.1 through 46.2-363) of Chapter 3 of Title 46.2 of the Code of Virginia is repealed." There is no indication in the language of the repeal of the statute that the legislature intended the repeal itself to be applied retroactively. Additionally, the statute is clearly substantive law. Since the trial court did not err, this case does not represent a miscarriage of justice, and therefore does not fall within the ends of justice exception.

C. *The evidence was sufficient to support a finding that Everette was driving the motor vehicle.*

Everette argues that the Commonwealth failed to offer sufficient evidence to exclude the hypothesis that someone else was driving the vehicle. We disagree.

To prove beyond a reasonable doubt that Everette was the driver, the Commonwealth needed to present evidence that would justify the trier of fact rejecting any reasonable hypothesis of innocence supported by the evidence. *Case v. Commonwealth*, 63 Va. App. 14, 22 (2014); *Powers v. Commonwealth*, 211 Va. 386, 388 (1970); *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004). Even if "'some evidence . . . support[s]' the appellant's hypothesis of innocence," we must affirm if "a reasonable [fact finder], upon consideration of all the evidence,

could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt." *Emerson*, 43 Va. App. at 277 (third and fourth alterations in original) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). A reasonable fact finder may reject theories advanced by the defendant even if they are supported by some evidence, so long as it could reasonably infer from all the other evidence a theory of the case consistent with guilt and inconsistent with innocence. *Commonwealth v. Moseley*, 293 Va. 455, 464-65 (2017) (citations omitted).

"Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). "[W]here the Commonwealth's evidence as to an element of an offense is wholly circumstantial, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" *Moral v. Commonwealth*, 4 Va. App. 310, 314 (1987) (quoting *Inge v. Commonwealth*, 217 Va. 360, 366 (1976)). Nonetheless, even if "'some evidence . . . support[s]' the appellant's hypothesis of innocence," we must affirm if "a reasonable [fact finder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt." *Emerson*, 43 Va. App. at 277 (third and fourth alterations in original) (quoting *Hudson*, 265 Va. at 513).

Here, Everette was the only person observed near the driver's side of the motor vehicle immediately following the collision. He also briefly left the immediate scene of the accident, paced back and forth on the opposite side of the highway, never ascertained the condition of the others involved in the accident, and returned only when persuaded by another driver to do so.

Everette's version of events concerning the alleged phantom driver was also inconsistent. At first, he stated that "Nate" was the driver. Later, while speaking with a nurse, he was overheard stating first that the alleged driver who ran from the scene was named "Willie," and then later represented to the same nurse that the driver was named "Joe Schmope."

In addition, a K-9 unit was employed to track the alleged driver within one hour of his alleged flight from the scene of the accident, but the unit found no evidence of anyone leaving the scene of the accident even though the conditions for tracking were ideal. Given the inconsistencies in Everette's version of events as well as the strength of the circumstantial and direct evidence supporting the trier of fact's conclusion that he was the driver of the vehicle, the evidence is sufficient to support the conviction when coupled with his previous adjudication in 2005 as a habitual offender. Viewed as a whole, the circumstances presented to the trial court were sufficient for a rational fact finder to conclude that Everette was the driver of the vehicle. Therefore, the trial court did not err in convicting Everette of operating a motor vehicle after having been adjudged a habitual offender.

### III. CONCLUSION

Accordingly, we affirm Everette's conviction.

*Affirmed.*