COURT OF APPEALS OF VIRGINIA

Present:    Judges Raphael, White and Senior Judge Petty
Argued at Richmond, Virginia


MUNIR MA'MOUN HUSSEIN, SOMETIMES KNOWN AS
  MUNIR MA'MOUD HUSSEIN
                                            MEMORANDUM OPINION* BY
v.        Record No. 0779-22-2              JUDGE STUART A. RAPHAEL
                                                 AUGUST 1, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Ricardo Rigual, Judge[1]

James J. Ilijevich for appellant.

Rebecca M. Garcia, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Munir Ma'moud Hussein of possession of a Schedule II controlled

substance, felony eluding, driving a commercial motor vehicle under the influence, failing to

obey a traffic signal, and failing to use flares. Hussein argues that the evidence failed to prove

felony eluding or driving a commercial vehicle under the influence. He argues that the trial court

erred when it denied his Fourth Amendment suppression motion. And he claims that the trial

court erred in failing to treat him as a first-time offender and in imposing a sentence exceeding

the sentencing guidelines.[2] Finding none of those claims meritorious, we affirm the judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The Honorable Joseph Ellis presided over the motion to suppress hearing.

[2] Hussein also appeals his convictions for the two traffic infractions, but he made no
reference to them in his brief, so any argument concerning those convictions is waived. *See* Rule
5A:20(e); *Jay v. Commonwealth*, 275 Va. 510, 520 (2008).

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard" the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Spotsylvania County Sheriff's Deputy Yekaterina Lecarpentier was on her way to work when she heard a report of a disabled tractor-trailer on Partlow Road. Partlow Road is a long, winding road with one lane of travel in each direction and a very narrow shoulder. Lecarpentier was nearby, so she headed that way and found the tractor-trailer stopped in the travel lane, with cars lined up behind it. The road was dark, and Hussein—the tractor-trailer's driver—had failed to use flashing hazard lights, flares, or emergency triangles so others could see that his truck was obstructing the roadway.

Lecarpentier parked her squad car behind the tractor-trailer, engaged her emergency lights, and approached Hussein. When she asked if he was all right, Hussein responded in the affirmative. Hussein said that his tractor-trailer had broken down and that he "need[ed] twenty more minutes to finish his research." Lecarpentier asked Hussein what he meant, but he did not respond. He refused to engage his hazard lights and told Lecarpentier that he did not need flares behind his tractor-trailer.

Hussein then "became erratic." He repeatedly yelled "no" at the "top of his lungs" and told Lecarpentier that she needed to leave. Lecarpentier suspected that Hussein was either under the influence of narcotics or experiencing a "psychotic mental breakdown," so she directed him to turn

on his hazard lights and pointed to her badge to convey that it was not just a request. She also asked Hussein for his driver's license. Hussein responded by rolling up the window. When Lecarpentier tried to open the driver's-side door, Hussein closed it, locked it, started the engine, and drove off slowly. Lecarpentier returned to her squad car, activated her siren, and drove after Hussein, notifying her dispatcher that she was in pursuit.

Hussein failed to stay in his lane for more than 30 seconds at a time. He drove over the double-yellow lines and the fog line; sometimes all of his tires were in the wrong lane. Oncoming traffic had to swerve to avoid being hit. More deputies arrived to assist, setting down spike strips, closing off roads and parking lots, and engaging in "tandem jumping," meaning police cars tried to get ahead of Hussein to close off adjoining roads at intersections.

Hussein drove through three red lights without engaging his brakes. Even after his front tires deflated from the spike strips, he disregarded repeated commands from Lecarpentier and other deputies to stop. He drove at speeds from 9 to 15 miles per hour for about 80 minutes. The pursuit ended when Hussein's tractor-trailer "jackknifed" off the road and into a ditch as Hussein failed to negotiate a tight left-hand turn.

Hussein retreated to the sleeper cab of his tractor-trailer, precipitating a three-hour standoff with SWAT and tactical officers. The standoff ended when officers forcibly entered the tractor-trailer and arrested Hussein.

When Lecarpentier asked if he knew where he was, Hussein's first answer was New Jersey. His second guess was Pennsylvania. Upon learning he was in Virginia, Hussein expressed surprise. Lecarpentier observed that Hussein's pupils were constricted, he was unsteady on his feet, and he spoke rapidly.

A search of Hussein's wallet revealed a small baggie containing a white, powdery substance that Lecarpentier suspected was methamphetamine. After Hussein failed several field sobriety tests,

Lecarpentier arrested him for driving under the influence of a controlled substance and transported him to Mary Washington Hospital for a blood sample. Hussein's blood tested positive for methamphetamine and amphetamine. The contents of the baggie also tested positive for methamphetamine.

Before trial, Hussein moved to suppress the Commonwealth's evidence, arguing that Lecarpentier lacked reasonable suspicion at the outset to detain him. But the trial court denied his motion. At the jury trial that followed, the Commonwealth presented several witnesses, including Lecarpentier, Lieutenant Barbra Harvey, who was on the scene during the pursuit, and Robyn Amos-Kroohs, a toxicologist who described the effects of methamphetamine on the human body and on driving behavior. The jury found Hussein guilty of felony eluding and driving under the influence.[3]

The court held a sentencing hearing where it considered the presentence report, the discretionary sentencing guidelines, and Hussein's letters of support. Hussein asked the trial court to treat him as a first-time offender under Code § 18.2-251. The court declined, sentencing Hussein to 6 years and 12 months' incarceration (with 4 years and 24 months suspended) and a $1,150 fine.

ANALYSIS

Hussein raises four assignments of error challenging the sufficiency of the evidence, the denial of his suppression motion, and the terms of his sentence. We address them in order.

A. *Sufficiency of the Evidence*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original)

---

[3] The jury also found Hussein guilty of failure to use flares, failure to obey a traffic light, and possession of a Schedule II controlled substance.

- 4 -

(quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)).  "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

### 1. *Felony Eluding (Assignment of Error 1)*

To obtain a conviction under Code § 46.2-817(B), the Commonwealth had to prove that Hussein (1) "received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop" and (2) drove "such motor vehicle in a willful and wanton disregard of such signal so as to" (3) "interfere with or endanger the operation of the law-enforcement vehicle or endanger a person."  Hussein argues that the Commonwealth failed to prove the third element.

The element of endangerment differentiates felony eluding from misdemeanor eluding.  "[C]onduct that raises the specter of endangerment is the evil contemplated and proscribed by" Code § 46.2-817(B).  *Tucker v. Commonwealth*, 38 Va. App. 343, 347 (2002).  "To 'endanger' is to 'expose to danger, harm, or loss.'"  *Coleman v. Commonwealth*, 52 Va. App. 19, 24 (2008) (quoting *Webster's New World Dictionary* 448 (3d coll. ed. 1988)).  The person endangered "can be the driver himself, the police officer, or anyone else on the road [who] could be put at risk from the driver's eluding."  *Id.*  The statute does not require an eluding defendant to pose an imminent threat.  Requiring an "imminent" threat "would engraft an [additional] element to the offense, thereby permitting the dangerous operation of motor vehicles until a person is actually imperiled, an absurd result that subverts the salutary purposes of the statute."  *Tucker*, 38

Va. App. at 347. "That the exposure to danger does not result in any actual harm is a welcome fortuity, but not a legal defense." *Coleman*, 52 Va. App. at 24.

The endangerment element was satisfied here. Hussein endangered other motorists when he repeatedly crossed into the opposite lane going the wrong direction and ran three red lights. Oncoming traffic had to swerve to avoid being struck. Hussein's refusal to stop endangered the officers who had to engage in a "very dangerous," "tandem jumping" maneuver. And Hussein endangered himself. He drove over spike strips that deflated his tires and continued driving while the rims of his tires threw off sparks. Ultimately, Hussein lost control of the tractor-trailer, driving it off the road and into a ditch.

The question for this Court is "whether '*any* rational trier of fact,'" *Vasquez*, 291 Va. at 248 (quoting *Williams*, 278 Va. at 193), could have found that Hussein "endanger[ed] a person," Code § 46.2-817(B). Even though Hussein drove at slow speeds throughout the incident, the trial court could reasonably conclude that Hussein endangered himself, the officers, and the motorists he encountered along the way.

### 2. *Driving Under the Influence (Assignment of Error 2)*

To convict Hussein of driving under the influence, the Commonwealth was required to prove that he drove or operated the tractor-trailer either (1) while "under the influence of any narcotic drug . . . to a degree which impair[ed] his ability to drive or operate any commercial motor vehicle safely," or (2) while he had "a blood concentration of . . . 0.1 milligrams of methamphetamine per liter of blood." Code § 46.2-341.24(A)(iii), (v)(b). Instruction 13, which Hussein does not contest, tracked those elements.

The Commonwealth introduced a certificate of analysis showing that, after his arrest, Hussein's blood contained 0.18 milligram of methamphetamine per liter of blood, thus exceeding the 0.1 limit in Code § 46.2-341.24(A)(v)(b). He also possessed a baggie of methamphetamine

when he was arrested. But he argues that the Commonwealth failed to prove that he ingested methamphetamine *before* driving or operating the tractor-trailer, rather than afterward, during the standoff with police. He says the Commonwealth did "not exclude every reasonable theory of innocence," including that he ingested methamphetamine when he was in the tractor-trailer's sleeper cab and out of sight of the officers.

"Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Holloway v. Commonwealth*, 57 Va. App. 658, 666 (2011) (en banc) (quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)). "[I]n considering an appellant's alternate hypothesis of innocence in a circumstantial evidence case, we must determine 'not whether there is some evidence to support' the appellant's hypothesis of innocence, but, rather, 'whether a reasonable [juror], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense.'" *Id.* at 665 (third alteration in original) (quoting *Emerson*, 43 Va. App. at 277); *see also Commonwealth v. Hudson*, 265 Va. 505, 513 (2003).

The jury could reasonably reject Hussein's hypothesis of innocence and convict him of driving under the influence under subsection (A)(iii) of Code § 46.2-341.24, rather than subsection (A)(v)(b). Subsection (A)(iii) does not impose a minimum threshold for methamphetamine in the blood while driving; it simply prohibits driving "under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature . . . to a degree which impairs his ability to drive or operate any commercial motor vehicle safely." Lecarpentier recounted in detail her first interaction with Hussein, which took place before the chase. She described Hussein as "erratic" and uncooperative, recalling that he repeatedly yelled "no" at the "top of his lungs" when she requested that he turn on his hazard lights. She told the jury that at that point she suspected Hussein was under the influence or experiencing a "psychotic mental breakdown." The jury heard

expert testimony about the effects of methamphetamine on driving, and during the pursuit, Hussein drove on the wrong side of the road, ran three red lights, continued driving after his tires deflated, and drove off the road into a ditch. He was found in possession of methamphetamine and tested positive for having ingested it. Lecarpentier explained that, when Hussein was arrested, his pupils were constricted, he was unsteady on his feet, and he spoke rapidly. He was confused about which State he was in. Considering the totality of the evidence, the jury could reasonably conclude that Hussein operated the tractor-trailer while under the influence of methamphetamine "to a degree which impair[ed] his ability to drive or operate [it] safely." Code § 46.2-341.24(A)(iii).

### B. Suppression (Assignment of Error 3)

"When challenging the denial of a motion to suppress evidence on appeal, the defendant bears the burden of establishing that reversible error occurred." *Street v. Commonwealth*, 75 Va. App. 298, 303-04 (2022) (quoting *Mason v. Commonwealth*, 291 Va. 362, 367 (2016)). "Appellate review of a suppression ruling involving a Fourth Amendment challenge presents a mixed question of law and fact." *Id.* at 304 (citation omitted). "This Court is 'bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them.' However, the Court reviews *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment." *Moreno v. Commonwealth*, 73 Va. App. 267, 274 (2021) (citation omitted) (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020)). "[O]ur review includes evidence presented at both the suppression hearing and the trial." *Id.* (quoting *Williams*, 71 Va. App. at 475).

Hussein argues that when he drove away from the scene and Lecarpentier pursued him, he was illegally seized. But "[a] Fourth Amendment seizure of a person occurs either by physical force or submission of the person to the assertion of law enforcement authority." *Hill v. Commonwealth*, 297 Va. 804, 811 (2019) (citing *California v. Hodari D.*, 499 U.S. 621, 626

(1991)). To determine when Hussein was seized, we must therefore consider his actual response to the officer's show of authority and when he "actually *submitted*" to that show of authority. *Beasley v. Commonwealth*, 60 Va. App. 381, 392 (2012).

Hussein's Fourth Amendment argument fails because he was not seized until officers removed him from the tractor-trailer, by which point they had ample suspicion that Hussein had committed several offenses. Before then, Hussein had not been physically restrained and had not submitted to Lecarpentier's show of authority. *See Hill*, 297 Va. at 811. His tractor-trailer was already stopped when Lecarpentier arrived. He disregarded Lecarpentier's command to turn on his hazard lights and, in response to her request for his driver's license, he rolled up his window, locked the door, and drove away. Thus, Hussein was not seized when the pursuit began, so his Fourth Amendment rights were not violated regardless of the level of suspicion Lecarpentier had at that time.[4]

### C. Sentencing (Assignment of Error 4)

Hussein's last assignment error challenges two aspects of his sentence. Neither challenge is meritorious.

#### 1. Deferred Disposition

Hussein argues that the trial court erred when it declined to grant him first-offender status under Code § 18.2-251. That statute provides:

> Whenever any person who has not previously been convicted of any criminal offense under this article . . . enters a plea of not guilty to possession of a controlled substance under § 18.2-250, the court, upon such plea if the facts found by the court *would justify a finding of guilt, without entering a judgment of guilt* and with the consent of the accused, *may* defer further proceedings and place him on probation upon terms and conditions.

---

[4] We need not consider the legality of the seizure that followed the chase. Hussein does not challenge it, and at oral argument, he conceded that as long as Lecarpentier "observed activity that she could cite him for" during the pursuit, the later seizure was justified.

(Emphases added). Code § 18.2-251 thus authorizes courts to defer disposition of drug-possession convictions "without entering a judgment of guilt." Hussein assigns error to the trial court's denial of his request for a deferred disposition.

But the statute permits a deferred disposition when the trial court finds that the facts "would justify a finding of guilt" but the court has *not yet* "enter[ed] a judgment of guilt." Code § 18.2-251. A deferred disposition was not permissible here because the conviction order was entered before Hussein requested first-offender status.[5] "Implicit in this statutory language is that the court has the discretion to permit a deferred disposition *if* it finds that the facts 'would justify a finding of guilt' *but has not yet actually pronounced the defendant guilty on those facts*." *Vandyke v. Commonwealth*, 71 Va. App. 723, 733 (2020) (construing parallel language in Code § 18.2-258.1(H)). In other words, this statute "very clearly does *not* permit a trial court to grant a deferred disposition after a trial court has entered a judgment of guilt." *Sullivan v. Commonwealth*, No. 1039-19-4, slip op. at 7, 2020 WL 6139904, at *3 (Va. Ct. App. Oct. 20, 2020).[6]

Even if the trial court had the power to defer disposition under Code § 18.2-251, doing so would be permissive, not mandatory. The statute provides that the trial court "may" defer further proceedings, not that it *shall* or *must* do so. Courts "will apply the ordinary meaning of the word 'may' in construing a statute unless a contrary legislative intention plainly appears." *Sauder v. Ferguson*, 289 Va. 449, 457 (2015). "Unless it is manifest that the purpose of the legislature was to use the word 'may' in the sense of 'shall' or 'must,' then 'may' should be given its ordinary meaning—permission, importing discretion." *Id.* (quoting *Masters v. Hart*, 189 Va. 969, 979

---

[5] The conviction order was entered on March 1, 2022. Hussein's sentencing hearing—where he asked for first-offender status—took place two months later, on May 16, 2022.

[6] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value. Rule 5A:1(f)." *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012).

(1949)). Code § 18.2-251 uses *may* six times and *shall* eleven times, confirming that the legislature was "well aware of the difference," *id.* at 458, intending to give trial courts discretion to defer a disposition, not to force courts to do so.

### 2. *Sentencing Guidelines*

We likewise reject Hussein's claim that the trial court erred when it imposed a sentence that exceeded the one recommended in the sentencing guidelines. The guidelines are "advisory only and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). "[T]he recommended sentencing ranges contained in these discretionary guidelines are not binding on the trial judge but, rather, are mere tools to be used by the judge in fixing an appropriate sentence within the limitations established by the statute governing punishment for the particular crime." *Luttrell v. Commonwealth*, 42 Va. App. 461, 465 (2004). A trial court's decision about whether to follow the discretionary sentencing guidelines is "not . . . reviewable on appeal." Code § 19.2-298.01(F). We consider instead whether the sentence fell outside the permissible statutory range. *See Smith v. Commonwealth*, 26 Va. App. 620, 626 (1998); *Valentine v. Commonwealth*, 18 Va. App. 334, 339 (1994).

Here, Hussein was sentenced within the permissible ranges for the statutes under which he was convicted. *See* Code §§ 18.2-250, 46.2-817(B), 46.2-341.24, 46.2-833, 46.2-111. "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du v. Commonwealth*, 292 Va. 555, 565 (2016)).

### CONCLUSION

In sum, Hussein's arguments do not warrant reversing his convictions or his sentence.

*Affirmed.*