COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Huff and Callins
Argued at Richmond, Virginia


LAVISHIA TIA FULTON, SOMETIMES KNOWN AS
 LAVISHA TIA FULTON

v.      Record No. 0483-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CHIEF JUDGE MARLA GRAFF DECKER
APRIL 18, 2023


FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
Lynn S. Brice, Judge

Paul C. Galanides for appellant.

Lucille M. Wall, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Lavishia Tia Fulton appeals her convictions for maliciously firing a gun at an occupied

vehicle, in violation of Code § 18.2-154, and attempted aggravated malicious wounding, in

violation of Code §§ 18.2-26, -51.2. The appellant argues that the evidence was insufficient to

prove that she pointed a firearm at the victim or the victim's car when she discharged the gun. For

the reasons that follow, we affirm the trial court's judgment.

BACKGROUND [1]

On the evening of February 23, 2021, Raven Edmonds drove her car out of her

neighborhood. Once out of the neighborhood, she noticed that the appellant was following in her

---

* This opinion is not designated for publication. *See* Code § 17.1 413.

[1] "In accordance with familiar principles of appellate review, the facts will be stated in
the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v.
Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469,
472 (2018)).

car and driving very close to the rear bumper of Edmonds's car. The appellant was the only one in her vehicle. Edmonds called 911 and reported that someone was following her. The appellant continued to follow Edmonds as Edmonds remained on the phone with the 911 operator.

Consistent with instructions from the 911 operator, Edmonds turned on her emergency flashers as she continued to drive. Shortly thereafter, the appellant sped up and moved to the left so that her car was parallel to Edmonds's vehicle. The window was down on the appellant's passenger side, and Edmonds's driver's side window was "cracked" open. Edmonds saw the appellant extend her arm over the front passenger seat while pointing a gun at her. When she saw the gun, Edmonds ducked down and took her foot off the accelerator. Within seconds, Edmonds heard gunshots.[2] She exclaimed to the 911 operator that shots had been fired, and she "yelled out" the appellant's license plate number. The appellant sped up and moved in front of Edmonds's vehicle before driving away.

Edmonds met the police about one-half mile from the location of the shooting. She was not struck by any bullets, nor could she identify any damage to her car from the incident.

Colonial Heights Police Officer J.C. Powell was nearby when Edmonds called 911. He responded to the call and, as he approached Edmonds's location, heard six distinct gunshots. Powell tried to locate the appellant's vehicle but was unsuccessful after canvassing the area. He returned to the location where the shooting took place. When Powell searched the area, he found five nine-millimeter shell casings on the street in the vicinity of the shooting. They were spread out, starting at the baseline of the white sideline of the roadway within an area of about 100 yards. The casings were spread out in a manner that was consistent with being fired from a

---

[2] The gunshots and Edmonds's panicked voice can be heard on the 911 recording, which was admitted into evidence at trial.

moving vehicle. Officer Powell explained that most standard semi-automatic firearms eject cartridge casings "to the right."

Colonial Heights Police Officer Eric Reedy, the investigating officer, interviewed Edmonds after the shooting. She told him that the appellant had followed her from her home to the area where she shot at her. Edmonds said that the appellant pointed the gun at her across the front passenger seat of the appellant's car. She also told the officer that she saw a flash come from the weapon.[3] She further explained that, at that point, she leaned her head down and started driving slowly because she did not know if she was going to get hit by the gunfire.

After speaking with Edmonds, Officer Reedy obtained a search warrant for the appellant's vehicle, a 2015 Chevy Spark. A box of nine-millimeter ammunition and a silver and pink nine-millimeter gun with three cartridges loaded in the magazine were found in the car.

After her arrest, the appellant admitted that the gun and ammunition were hers. She told the police, "I didn't do this," but asked one officer, "Have you ever seen somebody beat charges like this?"

Testifying in her own behalf, the appellant stated that on the day of the incident she saw Edmonds in her car and followed in her own vehicle in order to talk to her. The appellant said she flashed her lights and honked the horn to signal for Edmonds to stop. According to the appellant, she and Edmonds eventually stopped their vehicles side by side in the middle of the road. The appellant said that as she tried to talk to Edmonds, Edmonds threw an object at her car and hit the hood.[4] The appellant testified that at that point she grabbed her gun in her right hand and "fired several warning shots out of the driver's side window directly in the air." She denied

---

[3] At trial, Edmonds testified that she could not recall telling the officer about a flash.

[4] Edmonds denied throwing anything at the appellant's car.

pointing the gun at Edmonds or her car before driving away. The appellant acknowledged she did not contact law enforcement and was arrested over a week later.

The trial court found that Edmonds's testimony was "very credible." The court noted the alarm in Edmonds's voice during the 911 call, indicating that she was agitated and fearful when she reported that the appellant shot at her. Further, the court found that Edmonds's testimony was corroborated by her statements to Officer Powell and the discovery of the shell casings. The court found that the five shell casings located within a total distance of about 100 feet was "extremely consistent with someone driving down the Boulevard, as the victim has said," and "[n]ot shooting out of a vehicle in the air, out [their] driver's side window." The court also concluded that, as Officer Powell noted, the location of the casings was consistent with shots being fired from another vehicle. The court noted that the victim's statements to the officers at the scene after the shooting were slightly different than what she testified to at the trial. However, it found that the "only difference of substance" between her testimony at trial and her relevant statement to the officer was that she "told the officer she saw a flash." The judge emphasized the victim's statements on the 911 call and later to the officers that the appellant was "actively shooting at [her] car," from the passenger window.

Based on these factual findings, the court concluded that the Commonwealth had proven all the elements of the offenses. It convicted the appellant of maliciously firing a gun at an occupied vehicle, attempted aggravated malicious wounding, and shooting a firearm from a vehicle in motion. The appellant was sentenced to a total of thirty years of incarceration, with twenty-seven years and six months suspended.

ANALYSIS

The appellant argues that the evidence was insufficient to support her convictions for maliciously shooting at an occupied vehicle and for attempted aggravated malicious wounding.[5] Her sole challenge is that the Commonwealth did not establish that she fired her gun *at* Edmonds or her car.

"When presented with a sufficiency-of-the-evidence challenge in criminal cases, [the appellate court] review[s] the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Commonwealth v. Barney*, ___ Va. ___, ___ (Mar. 16, 2023) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). This review requires the Court to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn" from that evidence. *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

In conducting this review, the Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Barney*, ___ Va. at ___ (emphasis added) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). Instead, the "only 'relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at ___ (emphasis added) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly

---

[5] She does not challenge her conviction for shooting a firearm from a vehicle, in violation of Code § 18.2-286.1.

wrong."[6] *Fary v. Commonwealth*, ___ Va. App. ___, ___ (Apr. 18, 2023) (en banc) (quoting *Lucas v. Commonwealth*, 75 Va. App. 334, 348 (2022)). "If there is evidentiary support for the conviction, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." *Id.* at ___ (quoting *Lucas*, 75 Va. App. at 342). "These principles apply with equal force to bench trials no differently than to jury trials." *Id.* at ___ (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)); *see also Caldwell v. Commonwealth*, 298 Va. 517, 526 (2019) (noting that appellate courts afford factual findings made in a bench trial the "same weight as a jury verdict").

Applying these principles, we review the sufficiency of the evidence to support the appellant's convictions, limited to the specific challenge raised on appeal. *See Kirby v. Commonwealth*, 264 Va. 440, 444-45 (2002) (declining to "notice" arguments not "encompass[ed]" by an assignment of error); *see also* Rule 5A:20. In order to do so, we first look to the elements of the offenses. To support the conviction for maliciously shooting at an occupied vehicle, the Commonwealth was required to prove that the appellant maliciously shot at a "motor vehicle . . . occupied by one or more persons" and, in doing so, "put in peril" "the life of any person . . . in such motor vehicle." *See* Code § 18.2-154. To establish that the appellant attempted an aggravated malicious wounding, the Commonwealth had to present evidence that she attempted to "maliciously shoot[], stab[], cut[] or wound[] any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill" and cause a "permanent and significant physical impairment." *See* Code § 18.2-51.2. *See generally Watkins v. Commonwealth*, 62 Va. App. 263, 268 (2013) ("An attempt is composed of . . . the intent to

---

[6] Upon appellate review, "the issue of exclusion of reasonable theories of innocence is limited to those theories advanced by the accused at trial." *Barney*, ___Va. at ___ (quoting *Hudson*, 265 Va. at 514).

commit the crime[] and a direct, ineffectual act . . . toward[] its commission." (quoting *Parsons v. Commonwealth*, 32 Va. App. 576, 582 (2000))).

In this case, the appellant does not dispute that she fired the gun. Instead, she argues that her testimony about the events is more believable and plausible than the victim's account. The appellant emphasizes that Edmonds was not injured and her car was not damaged in the incident. Based on these facts, the appellant suggests that it is "inconceivable" that "not a single shot would have found its target" if, as Edmonds recounted, the appellant pointed the gun directly at her before firing. Rather, the appellant argues that the trial court should have credited her testimony that she pointed her gun up into the air when she fired. The appellant simply contends that she was more believable than the victim and her testimony presented a reasonable hypothesis of innocence that the trier of fact was bound to accept. Neither the facts nor the law supports this conclusion.

Despite the appellant's argument to the contrary, the evidence was sufficient to prove that she fired the gun while pointing it at Edmonds and her car and to eliminate all reasonable hypotheses of innocence that would flow from the evidence. *See, e.g.*, *Moseley*, 293 Va. at 464 (citing *Hudson*, 265 Va. at 513-14). "Merely because [the] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with [her] innocence has not been excluded." *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004) (quoting *Miles v. Commonwealth*, 205 Va. 462, 467 (1964)). The fact finder "determines which reasonable inferences should be drawn from the evidence[ ] and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Moseley*, 293 Va. at 464. "[T]he question," therefore, "is not whether 'some evidence' support[ed] the hypothesis, but whether a rational factfinder could have found the incriminating evidence render[ed] the hypothesis of innocence unreasonable." *James v. Commonwealth*, 53 Va. App. 671, 682 (2009)

(quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)). Ultimately, like any other factual finding, whether the evidence excluded all reasonable hypotheses of innocence is subject to "revers[al] on appeal only if plainly wrong." *See, e.g.*, *Thorne v. Commonwealth*, 66 Va. App. 248, 254 (2016) (quoting *Stevens v. Commonwealth*, 38 Va. App. 528, 535 (2002)).

Edmonds testified that the appellant pointed a gun at her while she was in her car. She testified that when she saw the gun pointed at her, she ducked and took her foot off the accelerator. The appellant then fired her gun multiple times in succession. The court as trier of fact determined that Edmonds was "very credible" and that her account was believable and supported by other evidence. "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). The trial court found that the "only difference of substance" between the victim's testimony at trial and her statements at the time of the incident was that she "told the officer she saw a flash." The court emphasized that it was not unusual that the victim did not remember that detail specifically and instead focused on her statements on the 911 call, that the appellant was "actively shooting at [her] car" from the passenger window. *See generally Perkins v. Commonwealth*, 31 Va. App. 326, 331 (2000) (noting that sitting as the finder of fact, the trial court "may accept or reject the testimony" of any witness "in whole or in part").

Edmonds's testimony was corroborated by her statements to the police, as well as other facts and circumstances. Edmonds can be heard on the 911 call providing a detailed description of the events leading up to and including the gunfire from the appellant's car. Her voice showed fear and anxiety. On the day of the shooting, Edmonds told Officer Reedy that the appellant pointed a gun at her across her passenger seat. Officer Powell, who was in the vicinity at the

time of the incident, heard six distinct shots, which can also be heard on the 911 audio recording. The police later collected five shell casings disbursed over an area of about 100 feet on the street where the shooting occurred. The casings were from nine-millimeter ammunition, and a nine-millimeter gun was later found in the appellant's car. Officer Powell testified that the placement of the shell casings was consistent with having been fired from a moving car, just as Edmonds described in her testimony.

The evidence explains why Edmonds did not *see* the appellant fire the gun. Significantly, she saw it pointed at her, ducked, and decelerated. Her acts of self-preservation made it impossible to see the shots fired at her. But, Edmonds heard them right after she took cover and she reported all of this to the 911 operator.

A review of the sufficiency of the evidence "does not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Moseley*, 293 Va. at 463 (quoting *Hudson*, 265 Va. at 513). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams*, 70 Va. App. at 27 (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). The trial court specifically found that the location of the five shell casings was "extremely consistent with someone driving down the Boulevard, as the victim . . . said," and "[n]ot shooting out of a vehicle in the air," as proposed by the appellant.

The court expressly rejected the appellant's testimony that she fired her gun directly into the air. As the finder of fact in a bench trial, the court was tasked with assessing the appellant's credibility and entitled to conclude that her testimony was false. *See Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (explaining that "[i]n its role of judging witness

credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal h[er] guilt" (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998))).

Further, the absence of bodily injury or property damage after the shooting was explained by Edmonds's evasive actions upon seeing the gun. Edmonds saw the gun in the appellant's hand pointed at her across the passenger seat when the two cars were parallel but moving forward. In response, Edmonds immediately "ducked" and lifted her foot from the accelerator to slow her car. In light of these actions, it was reasonable for the trial court, as finder of fact, to conclude that Edmonds and her vehicle, the intended targets, were abruptly removed from the line of fire.

The evidence, viewed in the light most favorable to the Commonwealth, supports the factual finding that the appellant fired her gun at Edmonds and her vehicle, and not into the air. Based on well-established principles, the trial court's findings and rejection of the appellant's hypothesis of innocence were not plainly wrong or without supporting evidence. *See, e.g.*, *Ervin v. Commonwealth*, 57 Va. App. 495, 518-19 (2011) (en banc).

CONCLUSION

The evidence supports the finding that the appellant fired her gun at Edmonds while she was inside the vehicle. Consequently, we hold that the Commonwealth proved the appellant's guilt beyond a reasonable doubt, and we affirm the convictions for maliciously firing a gun at an occupied vehicle and attempted aggravated malicious wounding.

*Affirmed.*