COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Frucci

DEREK MCKINLEY MABINS

v.     Record No. 1140-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
OCTOBER 21, 2025

FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Robert H. Morrison, Judge

(Michael Hartley, Assistant Public Defender, on brief), for appellant.

(Jason S. Miyares, Attorney General; Mary Catherine Talbott,
Assistant Attorney General, on brief), for appellee.

The trial court convicted Derek McKinley Mabins ("appellant") of grand larceny, in

violation of Code § 18.2-95; felony failure to appear, in violation of Code § 19.2-128; petit

larceny, in violation of Code § 18.2-96; and intentional destruction of property valued at less

than $1,000, in violation of Code § 18.2-137(B)(i). The court also found appellant in violation of

the conditions of his probation related to prior convictions. On appeal, appellant argues that the

evidence was insufficient to prove he committed grand larceny and that the trial court erred by

sentencing him "excessively." For the following reasons, we affirm the trial court's judgment.[1]

BACKGROUND

"On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,'

the prevailing party below." *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the appeal is wholly without merit." *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a).

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

On January 6, 2023, appellant went to Quick Cash Pawn[2] in Danville to sell a "Cub Cadet zero turn, fifty-four-inch cut" lawn mower. Appellant told the store manager, Andrea Crites, that he wanted to sell the mower because he no longer needed it for his lawn care business. Crites prepared a contract to buy the mower for $1,750 and appellant signed the document.

On January 7, 2023, Randy Dawson contacted the police and reported that his yellow and black "Cub Cadet, fifty-four inch zero turn" lawn mower was missing. On that same date, Dawson had arrived home and noticed "skid marks through the yard where something had been dragged." The investigating officer also noted that "it looked like something had been drug [sic] through the front yard" of Dawson's home. The last time Dawson had seen the mower on his property was "a day or two prior" to January 7. Dawson testified that, at the time the mower went missing, it was "in really good condition," such that he could use it for "jobs," and its value was "around two thousand" dollars. Dawson never gave appellant permission to come onto his property or take his mower.

A few days later, police informed Crites that the mower she had purchased from appellant had been reported stolen. When Crites contacted appellant, he claimed he had a bill of sale and could prove he owned the mower and told Crites he would repay the $1,750. Appellant returned to Quick Cash on January 11 and gave Crites $1,400. He told Crites he needed a few more days to get the remaining $350 and that he had lost the bill of sale.

---

[2] Quick Cash Pawn is also referred to in the record as "First Cash."

Later that same day, Investigator Giles Jones interviewed appellant about the mower. Appellant told Jones that a man named "Quick" sold him the mower and delivered it to his house on January 2 or 3, 2023. He also stated that he provided his bill of sale to Quick Cash, but was told it was not needed. Appellant told Jones he could get the bill of sale; he also said he may have thrown it away. Appellant never repaid the $350 to Quick Cash or produced a bill of sale. Jones later determined that "Quick" was Maurice Davis, who lived on the same road as Dawson.

Appellant was arrested and charged with grand larceny, in violation of Code § 18.2-95. At the time of his arrest, appellant was on probation for several 2013 convictions. As a result of his new charge, he was also charged with violating the conditions of his probation.

On September 14, 2023, appellant did not appear for his pretrial conference. A capias was issued, and appellant was eventually apprehended on January 24, 2024.

At his bench trial, appellant confirmed that he sold the mower to Quick Cash in January 2023. He stated he purchased the mower on January 2 through Facebook Marketplace and paid $400. Appellant claimed the seller went by the name "Quick," which he later found out was a pseudonym for Darnel Canada. He stated he met Canada at an "old shop" and moved the mower from Canada's trailer to his own trailer. Appellant testified that he got a bill of sale from Canada but threw it away after he sold the mower because he "felt like it wasn't important to keep." He also stated that he never questioned the low price, even though he knew the mower was worth more than $400, because it "wasn't running."

Appellant denied knowing the mower was stolen. He said he immediately tried to give the money back to Quick Cash and cooperated with the investigation. Appellant admitted he lied when he told Crites the mower had been used for his lawn care business. Appellant also admitted having around 20 prior felony convictions.

In finding appellant guilty of grand larceny, the trial court commented that there was "overwhelming circumstantial evidence of [appellant's] guilt." It stated that there was "no dispute" that the mower was stolen from Dawson's property and in appellant's recent possession. The court further commented that appellant's story was inconsistent and "deceit[ful]" and that some of his testimony was "outright lies."

After the court's verdict, appellant pleaded no contest to a charge of felony failure to appear and admitted he had violated the conditions of his probation. Before his sentencing hearing, he pleaded guilty to new charges of petit larceny and destruction of property.

Appellant's sentencing guidelines recommended one year and nine months to four years and four months of incarceration for the new convictions. His guidelines for the probation violation recommended six months to one year and six months of incarceration. Appellant asked the court to fully suspend the sentences.

By way of mitigation, appellant proffered that he had been accepted into Community Corrections Alternative Program (CCAP). He stated he had never participated in a treatment program and would benefit from its structure. Appellant also denied that he had stolen anything and emphasized that he immediately returned a large portion of the money to Quick Cash and tried to "make things right." Appellant said he had learned his lesson and wanted to get home to support his children. He asserted that aside from on September 14, 2023, he had made every single court appearance. He asked the court to consider that his most recent convictions were not violent in nature and to grant him leniency.

Noting that appellant's comments demonstrated his "failure to accept any responsibility," the court sentenced appellant to 15 years and 24 months of incarceration and suspended all but 4 years and 4 months. It also found it was appropriate to sentence appellant at the high end of the guidelines for the probation violation, commenting that appellant's "history [was] coming back

- 4 -

to haunt" him, which caused the guidelines to become "elevated." The court revoked 46 years and 35 months of appellant's previously suspended sentence and resuspended all but 1 year and 6 months. This appeal followed.

## ANALYSIS

### I. Sufficiency of the Evidence

Appellant argues that the evidence was insufficient to prove he committed grand larceny. Noting that Dawson did not witness the theft of his mower, he contends there was "no evidence" of its taking by appellant.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Larceny, a common law crime, is the wrongful or fraudulent taking of another's property without his permission and with the intent to deprive the owner of that property permanently." *Tarpley v. Commonwealth*, 261 Va. 251, 256 (2001) (quoting *Stanley v. Webber*, 260 Va. 90, 96 (2000)). And "[a]ny person who . . . commits simple larceny not from the person of another of goods and chattels of the value of $1,000 or more . . . shall be guilty of grand

larceny." Code § 18.2-95. Once the Commonwealth establishes that a larceny has occurred, "'the unexplained possession of recently stolen goods permits an inference of larceny by the possessor,' and 'throws upon the accused the burden of accounting for that possession.'" *Burton v. Commonwealth*, 58 Va. App. 274, 284 (2011) (citations omitted) (first quoting *Winston v. Commonwealth*, 26 Va. App. 746, 757 (1998); and then quoting *Hope v. Commonwealth*, 10 Va. App. 381, 385 (1990) (en banc)). "In order for the presumption to arise, the possession must be exclusive." *Archer v. Commonwealth*, 26 Va. App. 1, 13 (1997). Exclusive possession can be shown where "the accused was consciously asserting at least a possessory interest in the stolen property or was exercising dominion over [it]." *Id.* (alteration in original) (quoting *Best v. Commonwealth*, 222 Va. 387, 389 (1981)).

Also relevant here, "the credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). Moreover, the trial court was permitted to consider appellant's prior felony convictions in assessing his credibility. *See* Code § 19.2-269.

Here, Dawson testified that the mower's value was "around two thousand" dollars when it went missing from his property and that he never gave appellant permission to take it. Appellant physically possessed and exercised dominion over the mower when he sold it to Quick Cash only a day before Dawson reported it had been stolen. As a result, the trial court could infer that appellant was the person who stole it. *See Burton*, 58 Va. App. at 284. Appellant also

claimed ownership of the mower, falsely stating that he no longer needed it for his lawn business and that he could produce a bill of sale. And when attempting to explain how he came to possess the mower, he gave multiple conflicting stories. Appellant has thus failed to carry his burden of accounting for his possession. *See Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) ("It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" (alteration in original) (quoting *Pijor*, 294 Va. at 512)). Accordingly, the trial court was not plainly wrong in finding the evidence, taken in the light most favorable to the Commonwealth, sufficient to convict appellant of grand larceny.

Appellant also asserts that the Commonwealth did not "eliminate the reasonable hypothesis of innocence that [he] purchased the lawnmower and reasonably believed he did so lawfully." The "reasonable hypothesis of innocence" concept is "well defined." *Id.* "The Commonwealth need exclude only reasonable hypotheses of innocence that 'flow from the evidence itself, and not from the imagination' of the defendant." *Id.* (quoting *Pijor*, 294 Va. at 512). "Whether the hypothesis of innocence is reasonable is itself a 'question of fact,' subject to deferential appellate review." *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004) (citation omitted) (quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)). "Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." *Id.* (quoting *Miles v. Commonwealth*, 205 Va. 462, 467 (1964)). So a fact finder's decision regarding whether an alternate hypothesis of innocence is reasonable "is binding on appeal unless plainly wrong." *Emerson*, 43 Va. App. at 277 (quoting *Archer*, 26 Va. App. at 13).

Appellant's hypothesis that he reasonably believed he lawfully owned the mower is belied by his own accounts, which the trial court found inconsistent and "deceit[ful]." He

offered three different reasons why he could not produce a bill of sale for the mower. First, appellant told Crites that he had lost it. He then told Jones that he had offered it to Quick Cash but was told it was not needed. And at trial, appellant testified that he had thrown it away. Appellant also made conflicting statements about how he came to possess the mower: first he told Jones that "Quick" delivered it to his house, then he testified that he met "Quick" at a shop and moved the mower onto his own trailer. Additionally, appellant's timeline as to when he acquired the mower was inconsistent with Dawson's testimony: while appellant testified that he purchased the mower on January 2, Dawson stated that he had last seen it on his property "a day or two prior" to January 7. And although the mower was "in really good condition" and Dawson could use it before it was stolen, appellant said the mower "wasn't running" when he bought it. After seeing and hearing appellant testify, the trial court rejected appellant's claims, as it was entitled to do in its fact-finding role. Thus, the trial court's ultimate finding that appellant's theory was not reasonable was not plainly wrong, and we will not disturb it on appeal.

## II. Sentencing

Appellant argues that the trial court abused its discretion in sentencing him, both for the four new convictions and the probation violation, because the court "did not make any mention or acknowledgment" of his mitigating evidence.

With regard to appellant's new convictions, "[w]e review the trial court's sentence for abuse of discretion." *Laney v. Commonwealth*, 76 Va. App. 155, 165-66 (2022) (quoting *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011)). This Court will reverse a trial court's ruling for abuse of discretion only when "reasonable jurists could not differ." *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019) (quoting *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017)). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed

that maximum, the sentence will not be overturned as being an abuse of discretion." *Laney*, 76 Va. App. at 166 (quoting *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016)).

"The requirement that a trial court consider mitigation evidence at sentencing is not a requirement that the trial court will find such evidence compelling when weighed against other evidence." *Guest v. Commonwealth*, 78 Va. App. 187, 197 (2023). "[B]arring clear evidence to the contrary, [an appellate court] will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh sentence." *Id.* (second alteration in original) (quoting *Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992)).

Here, we see no clear indication that the trial court failed to consider appellant's mitigating evidence. Rather, the court reasonably found that evidence less compelling when weighed against other evidence, including appellant's extensive criminal history and "failure to accept any responsibility." And the court's sentence for the new convictions was within the range set by the legislature. *See* Code §§ 18.2-10(f), -11, and -95. "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Guest*, 78 Va. App. at 198 (alteration in original) (quoting *Minh Duy Du*, 292 Va. at 565). "Because there is no evidence that the trial court 'purposefully ignored'" appellant's mitigating factors, we affirm his sentence for the new convictions. *See id.*

Regarding appellant's probation violation, "[i]n revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (quoting *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013)). "If the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." Code § 19.2-306(C). Under Code § 19.2-306.1(B), if the basis of the violation is a new criminal

conviction committed during the suspension period, "then the court may revoke the suspension and impose or resuspend any or all of that period previously suspended."

"[W]hen a defendant violates the terms of his probation, 'the act of grace in granting probation in the first place is rendered a nullity.'" *Alsberry v. Commonwealth*, 39 Va. App. 314, 320 (2002) (quoting *Rease v. Commonwealth*, 227 Va. 289, 295 (1984)). "Thus, upon revocation of the suspended sentence, the defendant is punished in accordance with a previously imposed sentence not for the conduct prompting the revocation but for his commission of the original crime." *Id.* at 320-21.

Here, the sentence for appellant's probation violation was a proper exercise of the trial court's discretion. As the court noted, appellant had an extensive history of prior felony convictions, which caused the guidelines to become "elevated." *See Alsberry*, 39 Va. App. at 322 (holding that the court did not abuse its discretion by imposing the defendant's previously suspended sentence in its entirety in light of the nature of the original offenses and his "continuing criminal activity"). Consequently, we hold that the trial court did not err in sentencing appellant for his probation violation.

But although the court committed no substantive sentencing error, there is a scrivener's error in its sentencing order that requires correction. The transcript reflects that the trial court sentenced appellant to 10 years' incarceration with 7 years suspended on the grand larceny charge, case number CR23000133-00, and 12 months in jail with all months suspended on the petit larceny charge, case number CR24000135-00. However, the sentencing order states that appellant is sentenced to "ten (10) years on the Petit Larceny <$200 Not From a Person conviction (CR23000133-00)" and "twelve (12) months on the . . . Petit Larceny <$200 Not From a Person conviction (CR24000135-00)," and then suspends "seven (7) years on the Petit Larceny <$200 Not From a Person sentence (CR23000133-00)" and "all twelve (12) months on

the . . . Petit Larceny <$200 Not From a Person sentence (CR24000135-00)."  We therefore remand the matter to the trial court, for the purpose of correcting its sentencing order to reflect that the 10-year sentence and 7-year suspended sentence relate to the grand larceny conviction, case number CR23000133-00, and not the petit larceny conviction.  *See* Code § 8.01-428(B) (authorizing trial courts to correct "[c]lerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission").

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment and remand for the limited purpose of correcting a scrivener's error.

*Affirmed and remanded.*